**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RICHARD HOLT,

      Defendant-Appellant.

No. 05-2118
(D.C. No. CR 04-1686-WJ)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

On August 25, 2004, Richard Holt was charged in an indictment filed in the United States District Court for the District of New Mexico with being a felon in possession of a loaded firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. §924(a)(2). Holt, through counsel, filed a motion to suppress the use at trial of the firearm seized from his person "after a forcible stop." On October 22, 2004, the district court, after hearing, denied the motion to suppress.[1] Thereafter, pursuant to Fed. R. Crim. P. 11(a)(2), Holt

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] At the hearing, Officers Smith and Garcia of the Albuquerque Police Department testified, and no witnesses were called by Holt.

pled guilty to the charge of being a felon in possession of a firearm, reserving his right to appeal the district court's denial of his motion to suppress. Later, he was sentenced to 37 months imprisonment, followed by three years of supervised release. Holt then filed a timely notice of appeal.

On appeal, Holt raises one issue, i.e., whether "the forcible stop of Mr. Holt" was a violation of his Fourth Amendment right to be free from an unreasonable search and seizure. Reference to the background facts will put that matter in focus.

On the evening of July 28, 2004, officers of the Albuquerque Police Department went to a local motel located in a high crime area in Albuquerque and checked the parking area for stolen vehicles. They determined that one of the vehicles was indeed a stolen car and they called the owner of the stolen car and asked him to come to the motel. When the owner arrived, the officers asked him to open the trunk, where personal items belonging to one Bobby Washington were found. After a further check, the officers determined that Bobby Washington was at the time a probation violator and that a warrant for his arrest had issued. The officers then made a further check and found that Bobby Washington was registered at the motel with a room on the third floor. Bobby Washington was not in his room at the time, so the officers awaited his return. About midnight, Bobby Washington returned to his room and was promptly arrested pursuant to warrant.

Upon his arrest, and still in his hotel room, Washington repeatedly asked the officers if he could telephone his friend "Richard" and have him come and "get his

things."  The officers did not permit Washington to call his "friend," but one of the officers did place a call.  When that officer dialed the phone number provided by Washington, a male voice answered and said his name was "Richard."  The officer informed "Richard" that "Bobby [Washington] had just gotten popped and wants you to come and get his stuff."  When Richard asked if he could speak to Washington, the officer said he could not talk to Washington because he was with the police.

Shortly thereafter, the officers began taking Washington from the motel and transporting him to the local jail.  The officers  and Washington got into the motel elevator on the third floor  and went down to the ground level.  When the officers and Washington began to exit the elevator, into a breezeway at the ground level, they were confronted by an individual who turned out to be Richard Holt, the defendant in the present proceeding.  When Washington saw Holt, he said "That's my homeboy Richard." When the officers first observed Holt he was about six feet away and walking towards them.  He continued walking towards the group and, when he was about two feet away, one of the officers initiated what he described as an "interrogative stop," and in a civil and controlled tone of voice asked Holt to put his "hands on top of his head."  Holt obeyed.  As Holt did that, another officer saw a gun tucked in Holt's waistband and he yelled "Gun."  That officer immediately grabbed the gun.  The officers then threw Holt to the ground, handcuffed him and placed him under arrest.  It later was ascertained that the firearm was loaded and that Holt had a prior felony conviction.

On appeal, counsel's position is that, at the moment the police ordered Holt to "put

his hands on the top of his head," there was a violation of Holt's Fourth Amendment right to be free of an "unreasonable search" and that the subsequent discovery of a loaded firearm, tucked in his waistband, really was the "fruit of the poisonous tree." We disagree.

Officer Smith was the officer who asked Holt to "put his hands on top of his head." He testified at the hearing on the motion to suppress that he made that request in the interest of "officer safety." More specifically, Officer Smith testified that as he, and the others, exited the elevator, he was immediately surprised at a confrontation by an individual, later identified as Holt, who approached him on his left side. Smith testified that initially, Holt was about six feet away from him, but that Holt kept "coming toward" him and gave no indication of stopping. When Holt was about two feet away from Officers Smith and Garcia, Smith testified that he asked Holt to "put his hands on top of his head" because of Smith's concern for "officer safety, and for the safety of the prisoner in custody."

In denying Holt's pre-trial motion to suppress, the district court, in a rather detailed statement, spoke as follows:

> Another fact, and I think this is really the, in my view, it's the key fact; that as the elevator doors opened and Sergeant Smith and Detective Garcia and the others were taking Mr. Washington to the car, and Mr. Washington basically looked over at the defendant, who was right there within two to three feet, and said - in effect identified the defendant as his homeboy. And so the officers knew that there was a known associate of Mr. Washington right there, and of course, Mr. Washington was still in the process of

- 4 -

being arrested and taken to the patrol car.

> In my view, and contrary to what the defendant is arguing, the officer, particularly Sergeant Smith, had reasonable concerns for their safety and, based on training and experience, the safety of a person who is in handcuffs and being removed from a scene and being transported.
>
> Therefore, based on the totality of the circumstances surrounding the arrest of Mr. Washington, Sergeant Smith and his task force team members acted reasonably and did not violate the defendant's constitutional rights in asking the defendant to place his hands on his head.

Thus, the district court concluded that Officer Smith had an objective and articulable belief that "officer safety" was in jeopardy and that Smith's modest request of Holt to "put his hands on top of his head," prior to a "pat down" search of Holt, came well within the parameters of *Terry v. Ohio,* 392 U.S. l, 27 (1968). In that case, the Supreme Court spoke as follows:

> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

We agree with the district court's understanding of the facts and also agree that Officer Smith's request of Holt "to put his hands of the top of his head" was objectively reasonable under the totality of the described circumstances and did not impinge on Holt's Fourth Amendment rights. In support of our resolution of the present matter, *see*

- 5 -

*United States v. Maddox,* 388 F.3d 1356 (10th Cir., 2004)(officer safety can justify a "protective detention" or temporary seizure of a person on the scene of an arrest when an officer has reasonable and articuable suspicion of danger to law enforcement officers and himself, in light of the totality of the circumstances); *United States v. Holt,* 264 F.3d 1215, 1222 (l0th Cir. 2001)(officer may detain passenger of a vehicle in the interest of officer safety even in the absence of any particularized suspicion of danger); and *United States v. King,* 990 F.2d 1552 (10th Cir. 1993)(individual may be stopped for officer safety regardless of suspected criminal activity).

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge